STAPLES, J.
The authorities are generally agreed that in an action of trespass and assault and battery the defendant may under the general issue give in evidence matters which go merely to the quantum of damages by way of palliating the offence. Where the defendant relies upon provocation it must be so recent as to raise the presumption the assault was committed in heat of blood excited by the conduct or declarations of the plaintiff. The rule which confines the defendant *to proof of recent provocations received from the plaintiff is subject to modifications which more or less qualify the rule according to the particular circumstances of each case. In Fraser v. Berkely, 32 Eng. C. L. R. 658, it appeared, that the assault was made three or four days after the publication of the libel. Lord Ab-inger said the law would be an unwise law if it did not make allowance for human infirmities; and if a person commit violence at a time when he is smarting under immediate provocation that is matter of mitigation. He further said, that in the case before him as the blood has had time to cool, the parties, if death ensued, would be guilty of murder. The provocation three days before would not have availed them for going deliberately three days after to take their vengeance. At the same time he said “it appears to me too severe to say you should not look at the cause which induced the assault.” In other cases it has been held that although a considerable time may have elapsed between the provocation and the date of the assault, if the provocation was communicated to the defendant immediately preceding the assault it is admissible in evidence. Gaither v. Blowers, 11 Mary’d R. 536.
And so where the acts done or words spoken some time previous to the assault are a part of a series of provocation repeated and continued up to the time of the assault, they may be .received. Stetlar v. Nellis, 60 Barb. R. 524; 42 How. Prac. R. 103.
In Rawlings’ case, 1 Leigh 581. the general court while declaring that the rule in civil and criminal cases is the same, and that acts of provocation received so recently the blood has met had sufficient time to cool are only admissible in mitigation of damages, seemed to concede that where at the time of the assault allusion is made to the provocation previously given, *the evidence is as explanatory of the nature of the assault; provided the connection between it and the antecedent provocation plainly _ appears. In Field on Damages, § 116, it is said, that generally where vindictive damages for willful injuries to the person are claimed, the defendant shall not be restricted to matters which took place at the very time of the injury complained of. But he has a right to show the jury the true relation of the parties, and the facts and circumstances relating to the act, in order that they may determine how far the act was wanton, vindictive or malicious, or how far it is extenuated. See also Dolan v. Fagan. 63 Barb. R. 73.
It would seem to be clear, therefore, that the rule which restricts the proof to acts of recent provocation is not at all infringed by evidence of acts or declarations long anterior to the assault, when the plaintiff himself makes them a part of the res geste by repeating or by alluding to them at the time, in a manner which indicates a repetition or renewal of, or persistence in, the offensive act or declaration. An allusion to an insult previously given may justly exasperate as much as the insult itself. The fact that the defendant has before submitted in silence to an indignity may but serve to give the subsequent allusion the sharper sting. When that allusion is made in an offensive manner. no other conclusion can be drawn than that a renewal or repetition of the original offense was intended. At all events where there is doubt as to the meaning of the party, it is a matter peculiarly proper for the jury to determine whether the defendant in making the assault was acting under the provocation then received.
hi the case before us several of the witnesses concur in saying that the plaintiff just before the affray, said he had proved a good character by a number of citizens, *which he could say some others had not: thereupon one of the defendants, J. K. Davis, remarked to the plaintiff —I suppose you refer to that postal card, or as others have it, to that publication in the paper — and card; to which the plaintiff made no reply: and immediately thereafter William M. Davis, another of the defendants, commenced striking the plaintiff with *488 the switch. After this and other testimony was adduced the defendant offered to read to the jury two libellous communications written by the plaintiff, injuriously reflecting upon the character of the defendant William M. Davis. One of these communications written upon a postal card was addressed to the justice of the peace before whom there were pending warrants between these parties. It does not appear when this card appeared. Defendants offered to show it was a short time previous to the assault. The newspaper publication appeared two or three months before the assault. On the one side it is insisted that the plaintiff had no reference to the previous publication; that his language was not susceptible fairly of any such construction; that the defendants had previously conspired to attack the plaintiff, and the alleged provocation that day was a mere pretext, and had nothing to do with the attack. On the other hand it is insisted, .that the plaintiff must have referred to the previous publication, for when he was charged with having done so, he did not deny it, and he was careful not to deny it when he was examined as a witness in this case; that William M. Davis so understood the allusion, and the silence of the plaintiff when charged with it, justified him in so understanding and acting upon it. And furthermore that there is not a scintilla of evidence even tending to ■show any conspiracy or preconcerted purpose among the defendants to attack the plaintiff that day; and if William M. Davis had any such design be had obviously abandoned *it, for he was apparently in a good humor, and trying to settle and adjust all matters of difference, until the plaintiff made the allusion to the libellous publication already referred to. And then it was he commenced the attack. It must be admitted there is a good deal of evidence in the record to support this view. At all events amid such a conflict of testimony the question was peculiarly proper for the consideration of the jury. If the plaintiff did in fact aflude to the alleged libellous communications, and was so understood by the defendant William M. Davis, and the latter in making the attack was prompted by what he might justly consider a repetition of the insult or an offensive reference to it, it was necessary and proper that these communications should be laid before the jury, that they might understand the nature of the provocation under which the defendant acted.
It has been justly said that the affairs of men consist of. a complication of circumstances so intimately. interwoven as to be hardly separable from each other. Each owes its birth to some preceding circumstance, and in its turn becomes the prolific parent of others; a.nd each during its existence, has its inseparable attributes and its kindred facts materially affecting its character, and essential to be known in order toa right understanding of its nature. These surrounding circumstances constituting a part of the res gestae may always be shown to the jury in connection with the principal fact. In Rawson v. Haigh, 2 Bing. R. 104, 9 Moore R. 217, S. C., Mr. Justice Parke said, it was impossible to tie down to time, the rule as to declarations, and that if connecting circumstances exist, a declaration may even at a month’s interval form part of the whole res gestae. 1 Wharton on Evidence, sec. 589, 583, and cases cited. And when an altercation grows out of an offensive allusion to a previous declaration *or communication, it is absolutely essential to the purposes of justice, the nature of the communication or declaration should be known as explanatory of the conduct of the parties.
It has been further said that the defendant William M. Davis has already recovered judgment against the plaintiff on account of the publication of the alleged libels, and now to permit him to rely upon the same matter in mitigation of damages, would amount in effect to double satisfaction. In the first place there is nothing in the present record showing any such recovery or even the institution of any such action. This court of course cannot take notice of the mere suggestions of counsel on that subject. But even if it appeared that the defendant had recovered judgment for the alleged libel that fact would not of itself preclude him from relying upon it in the present action. Suppose he has -recovered damages for the libel, why may he not show he acted under the same provocation in making the assault. It is a matter for the jury, who having all the facts before them may graduate their damages accordingly, and do justice between the parses * hough he recover
mages for the libel, he has still the right to show the attack was not wanton. The rule seems to be that where the libel is the subject of a cross-action and recovery, the defendants ought not to derive much advantage from it in mitigation of damages. As in other actions of tort no inflexible rule can be laid down, where so much depends upon the character of the libel, the nature of the assault, and the conduct of the parties.
It is clear therefore that the circuit court erred in rejecting the evidence set out in the first bill of executions, unless indeed that evidence was inadmissible upon another ground now to be stated. And that is in a joint action of trespass against several defendants, It *is not competent to show a provocation received by one of them. It is insisted that in a joint action the jury must always assess joint damages, whether the defendants plead jointly or severally; and in such case the plaintiff is entitled to damages against the most culpable. And further, inasmuch as the malignant motive of one of the defendants cannot be made the ground of aggravating the damages against the other defendant, the converse of the proposition must be true — that a provocation received by one cannot be relied upon to shield the others who acted without excuse or provocation.
The correctness of these propositions need not be controverted herp. The enquiry still arises, how are the jury to determine who is *489 the most culpable unless they have all the evidence before them. The defendant who has received the greatest possible provocation may to all appearances be the most culpable in the assault. If all the proof of the provocation received by him is excluded, the jury must of course graduate their damages by their estimate of his guilt, although there are the strongest mitigating circumstances in his favor. Ret us take the present case as an illustration. Ret us suppose the defendant William M. Davis made the most violent attack on the plaintiff — all proof of provocation being excluded he of course must be considered the most culpable, and the jury would be told they must assess the damages with reference to his guilt. And yet hemayhaveactedinheatof bloodexciled by the most malignant assault upon his own character, or upon the reputation of a wife or daughter. All this is to be excluded from the jury according to the learned counsel for the plaintiff. And thus all the defendants are to be punished for the supposed guilt of one of them who is in fact the least guilty. It is very true the defendant who acted without provocation *cannot take shelter behind him who acted under provocation. Rach one of them and all of them must be held liable for what was done by each and the aggregate damage done by all; but that is no reason for allowing the plaintiff to recover vindictive damages for the assault of me of them provoked by his own conduct.
It is also true, as stated by counsel, that the plaintiff cannot rely upon the malignant motives of one of the defendants making the assault. The reason is obvious — the plaintiff may sue all jointly or each one separately. If he wishes to show peculiar grounds of aggravation against one of the defendants, he ought to bring his separate action against him. By joining the others he waives any special grounds of action peculiar to one. With the defendants it is altogether different. They have no choice in the matter. The plaintiff has the right to join them in the same action; but they ought not to be thereby precluded from showing any matter which in effect constituted the res gestse, and which may serve to explain the true relation of the parties to each other. It often happens as otherwise that the assault is made by one of the defendants under provocation recently received, and that others unite with him without his consent and without anv sort of premeditation or understanding. To deprive him of the right to show under such circumstances the ground upon which he acted, and to visit upon him all the consequences of a wanton and malicious assault, would be to sacrifice the soundest rules to the merest technicalities. If the defendants have deliberately conspired beforehand to aittack the plaintiff in revenge for some previous insult to one of them, the result might be very different. But. these are matters justly within the province of the jury — a tribunal by its very nature and constitution peculiarly adapted to pass upon such ^questions. As already intimated. I think the circuit court erred in excluding the evidence set out in the first bill of exceptions.
The second bill of exceptions involves ! substantially the same matters as the first. ' What has been already said renders unnecessary any further discussion of that point. ¡ Tor the reasons already stated, I think the circuit court ought to have permitted the witness to answer the question propounded by defendant’s counsel.
Before passing from this branch of the case, it is proper to notice the fact that the | postal card is not incorporated in either of ! the bills of exception. This was plainly a ¡ mere inadvertence. There is enough in the 1 record to show the character of this communication, and that it contained injurious reflections upon the defendant, Wm. M. Davis, and enough to show it was proper for the consideration of the jury. It is, however, not at all material, because the newspaper publication is a part of the bill of exceptions, and its exclusion is sufficient to reverse the judgment.
It is stated in the third bill of exceptions, that the defendant introduced a witness Samuel Green, a man of color, and asked him to state of some time previously, the plaintiff approached the witness in regard to the present case and made any request I that the witness would testify for him. and j the witness was requested to state the time, I place and circumstances of the conversation: and the defendant announced that their I object was to discredit the plaintiff who had j testified in the cause, by showing that the ¡ plaintiff had attempted to fabricate testi-j mony. If it be conceded that the evidence j was proper for the purpose intended, it is ¡ clear that no foundation had been laid for its introduction. The plaintiff being introduced as a witness, and the object being to discredit him as such, the same rules are applicable to him that apply to any other witness. *Where the object is to impeach the credibility of a witness by proof of statements previously made inconsistent with his testimony in the trial, the foundation for the impeaching testimony must first be laid by an examination of the witness with reference to such inconsistent statements. It is said that common justice requires that by first calling his attention to the subject he should have opportunity of making any proper correction, as well as of explaining the nature, circumstances and design of what he is proved ! elsewhere to have said. The same principle must govern where the object is to discredit the witness by proof of an attempt to fabricate testimony. Indeed wherever the object is to prove hostile declarations or acts, the witness must first be cross-examined as to such declarations, or acts, so that he may have an opportunity for explanation. 1 Wharton on Evidence, §§ 555, 566; Unis et als. v. Charlton’s adm’r, 12 Graft. 484. I think therefore the court did not err in rejecting the evidence set out in the third bill of exceptions.
It appears from the fourth bill of exceptions, that the plaintiff introduced a witness *490 who was asked if he was acquainted with the general character of the plaintiff for truth and veracity; to which the witness replied he had known the plaintiff for six or seven years, at Sulphur springs ten miles from Marion and at Marion, and that he knew the plaintiff’s general character for truth and veracity as well as any other man’s character against whom he had never heard anything alleged; that he had never heard plaintiff’s character called in question, &c. The defendant moved the court to exclude this answer, upon the ground that no proper foundation was laid for the introduction of the testimony. The court, however, overruled the motion, and the defendant excepted. It will be observed the witness does not say he never heard the plaintiff’s character *for veracity discussed, or made the subject of conversation; but that he never heard anything alleged against it, or even called in question. But although a man’s character may not be discussed, it may nevertheless be well known to his neighbors. Possibly in many cases the highest tribute that can be paid to the witness is that his reputation as a man of veracity is never called in question, or even made the subject of conversation in the community where he resides. When therefore the witness states that he knows the reputation of the person as a man of veracity, his competency to testify and the weight otherwise due to his testimony, are not at all lessened by the fact that he never heard the character of such person called in question, or made the subject of special conversation and discussion. The fourth bill of exceptions therefore presents no ground of error.
It appears from the fifth bill of exceptions that the plaintiff, for the purpose of sustaining his character for truth and veracity, introduced a witness, who testified that he lived, in the neighborhood of the_ plaintiff, and had never heard anything said against him as a man of veracity until the suits of Davis v. Franke and the present suit were instituted. Upon cross-examination the defendant asked the witness if he had not heard a number of the plaintiff’s neighbors testify in both suits that ' they were acquainted with plaintiff’s general character for truth and veracity among his neighbors; that it was bad, and they would not believe him on oath. To the answering this question the plaintiff objected — the court sustained the objection, and the defendants excepted. If the object of the defendants in asking the question, was to impeach the plaintiff’s character as a man of truth and veracity, the question was clearly inadmissible, for it pro-to extract from the witness what a number of persons *had said about his character on a particular occasion, which was altogether indefinite, and might mean two or a dozen. The true enquiry is what is the general character of the witness for truth and veracity? The common opinion, that in which there is general concurrence. is what is wanted in such cases, forming the general reputation or character of the person whose veracity is assailed.
On the other hand, if the object was to discredit the witness under examination, or to test his accuracy and means of observation, the question was equally inadmissible. For the witness had just said in effect that the plaintiff’s character had been called in question on the trial of the suits, and the defendants’ question was therefore but a repetition of the witness’ statement, in the form of an interrogatory; and was obviously but an adroit attempt to get from the witness what certain persons had stated on a particular occasion in derogation of the plaintiff’s character. The effect of the question was not to test the accuracy of the witness or his means of observation, but to bring into the cause statements made by other witnesses on the trial of other suits as proof of general character. I think therefore the circuit court did not err in excluding the answer to the question set out in the fifth bill of exceptions. This disposes of all the questions arising upon the record, and the result is the judgment must be reversed, the verdict set aside and a new trial awarded.
CHRISTIAN, ANDERSON, and BURKS, Js., concurred in the opinion of Staples, J.
The judgment was as follows:
This day came again the parties, by their counsel, and the court having maturely considered the transcript *of the record of the judgment aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the said circuit court erred in refusing to admit the evidence offered on the part of the plaintiffs in error as mentioned in their bills of exception No. 1 and No. 2 respectively; and that there is no other error in the said record. Therefore, it is considered by the court that, for the error aforesaid, the said judgment of the said circuit court be reversed and annulled, and that the plaintiffs in error recover of the defendant in error their costs by. them about the prosecution here of their said writ expended. And this court proceeding now to render such judgment in the cause as the circuit court ought to have rendered, it is further considered that the verdict of the jury therein be set aside and a new trial had; in which, should occasion arise, the circuit court shall proceed in conformity with the foregoing opinion and judgment of this court, which is ordered to be certified to the said circuit court of Smyth county.
Judgment reversed.